**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

EDWIN PAWLOWSKI,

          Plaintiff,

    v.

          CIVIL ACTION NO.: 3:24-cv-01448-AWT

UNITED STATES OF AMERICA,
Bureau of Prisons

          JULY 2, 2025

          Defendant.

**SECOND AMENDED COMPLAINT**

Plaintiff, Edwin Pawlowski, in accordance with the order of this Court dated May 19, 2025 appointing the undersigned counsel for the limited purpose of preparing and filing a Second Amended Complaint, respectfully submits Plaintiff's Second Amended Complaint, with jury demand, as follows:

**JURISDICTION AND VENUE**

1.      This action was commenced under the Federal Tort Claims Act ("FTCA") against the Defendant, United States of America alleging that Plaintiff, Edwin Pawlowski, suffered personal injuries and damages and emotional pain and suffering caused by the medical malpractice and negligence of doctors, medical professionals and other personnel at Danbury Federal Correctional Institution ("Danbury FCI") while Plaintiff was incarcerated at said facility.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2671, *et. seq.* and 28 U.S.C. § 1346(b).

1

3.      Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1402 because the events giving rise to this action occurred while the Plaintiff was incarcerated at FCI Danbury located in Danbury, Connecticut.

## PARTIES

4.      Plaintiff, Edwin Pawlowski, is an individual who presently is incarcerated in the Prison Camp at the Federal Correctional Institution in Cumberland, Maryland ("FPC Cumberland"), and who at all times relevant hereto was incarcerated at FCI Danbury.

5.      Defendant, United States of America, through its Bureau of Prisons, at all times relevant hereto operated FCI Danbury, and is a Defendant herein under the FTCA for the negligence and carelessness of its employees and personnel working at FCI Danbury.

## FACTUAL BACKGROUND

6.      At all times relevant hereto, Plaintiff was incarcerated at FCI Danbury.

7.      On April 3, 2020, United States Attorney General Robert Barr issued a Memorandum to the Director of the BOP identifying FCI Danbury as a correctional facility that was "experiencing significant levels of infection" from the COVID-19 pandemic. A copy of the Memorandum is attached hereto as Exhibit A and made a part hereof.

8.      On May 12, 2020, United States District Judge Michael F. Shea issued a Temporary Restraining Order as preliminary relief in a habeas petition brought by a class of inmates against FCI Danbury claiming, among other things, that the staff of FCI Danbury was failing to protect inmates from severe illness or death posed by COVID-19. See *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411 (D. Conn. 2020).

9.      The Plaintiff was at severe medical risk from complications from COVID-19 due to multiple medical vulnerabilities, including having only one lung (his left lung having

2

previously been removed by complete pneumonectomy), Chronic Obstructive Pulmonary Disease ("COPD"), dyspnea (shortness of breath), severe sleep apnea (utilizing a CPAP machine nightly to breath), hypertension, heart disease, diverticulitis and a herpes virus in his eyes requiring the use of daily anti-viral medications. A copy of the September 17, 2021 Bureau of Prisons report regarding Plaintiff's then current medical condition is attached hereto as Exhibit B and made a part hereof.

10.     On June 18, 2020, FCI Danbury's resident physician, Dr. Julie Fabregas-Schindler ("Dr. Schindler"), diagnosed another inmate with an acute rash, maculopapular diffused with wheels, as being consistent with the COVID-19 virus. Numerous other FCI Danbury inmates claimed the same ailment. A redacted copy of the other prisoner's records are attached hereto as Exhibit C and made a part hereof.

11.     Numerous medical studies and journals during this time outlined this type of skin aliment as an effect of the COVID-19 virus.  Copies of relevant articles are attached hereto as Exhibit D and made a part hereof.

12.     Prior to August of 2020, Plaintiff began experiencing an acute rash similar to the rashes suffered by other inmates, representing itself with agonizing sores, serrated lesions, and painful skin eruptions throughout and over the Plaintiff's entire body.

13.     On August 27, 2020, Plaintiff was examined by Dr. Schindler for this skin disorder consisting of an acute follicular rash over the plaintiff's entire body.  A copy of the record of said visit is attached hereto as Exhibit E and made a part hereof.

14.     At that visit, Dr. Schindler prescribed Prednisone tablets to Plaintiff and informed him that the rash was most likely COVID-19 related.

15. On August 28, 2020, Dr. Schindler also prescribed the Plaintiff Betamethasone cream to be applied topically twice daily to all infected areas of his body. A copy of the record of said visit is attached hereto as Exhibit F and made a part hereof.

16. On September 1, 2020, Plaintiff emailed Dr. Schindler informing her that he had not yet received the medication she prescribed and advising her that his symptoms were worsening and, "that he was itching himself crazy." At the same time, Plaintiff also emailed the FCI Danbury's warden, D. Easter, informing her of these circumstances and that he had not received his prescribed medications. A copy of the email is attached hereto as Exhibit G and made a part hereof.

17. On September 15, 2020, Dr. Schindler again examined the Plaintiff and noted that the follicular lesions and eczemations on his skin were scattered across his entire body. Dr. Schindler prescribed Plaintiff additional Prednisone tablets and Hydroxyzine tablets. A copy of the email is attached hereto as Exhibit H and made a part hereof.

18. Despite these prescriptions, Plaintiff's skin condition did not improve and his pain and itching actually increased.

19. On October 6, 2020, with no improvement in his condition and the pain increasing, the Plaintiff advised the FCI Danbury Medical Department that he continued to experience severe pain, suffering and emotional distress, and he sought and requested alternative medications from the FCI Danbury Medical Department. A copy of the record of said visit is attached hereto as Exhibit I and made a part hereof.

20. On October 9, 2020, Plaintiff again emailed Dr. Schindler and advised her that his symptoms were increasing and that he was in consistent pain and had consistent itching. He

begged Dr. Schindler to do something or prescribe some medication to stop the itching. A copy of the email is attached hereto as Exhibit J and made a part hereof.

21.     At the same time, Plaintiff also emailed Angela Dukate, FCI Danbury's Health Services Administrator, asking her for help in the refilling of his medication which had run out. He begged her for medical help, specifically stating that, "I am itching my skin off, I can't eat, sleep or stand without severe irritation." He also informed her there were several other inmates in his housing unit with the same rash. A copy of the email is attached hereto as Exhibit K and made a part hereof.

22.     On October 13, 2020, the Plaintiff again sought medical treatment at the DCI Danbury Medical Department regarding his skin rashes and sores which continued to worsen. By this point, Plaintiff was unable to sleep due to the pain and itching caused by the infectious rash.

23.     On October 13, 2020, Plaintiff was examined by Nurse Practitioner Werner Escobar who noted that the Plaintiffs rash had spread to his legs, arms and inner thighs. FNP Escobar advised Plaintiff that he would provide refills Plaintiff's previously prescribed medications. A copy of the record of said visit is attached hereto as Exhibit L and made a part hereof.

24.     On October 15, 2020, still not having received the prescribed medication, the Plaintiff emailed FNP Escobar advising him of same and advising him that his pain was worsening. A copy of the email is attached hereto as Exhibit M and made a part hereof.

25.     On October 19, 2020, Plaintiff again petitioned the Danbury FCI Medical Department to request a refill of Hydroxyzine HCI, which refill still had not been approved. FNP Escobar noted he would seek expedited approval of the drug to assist the Plaintiff with his pain,

impaired sleep and intense itch. A copy of the email is attached hereto as Exhibit N and made a part hereof.

26.     On October 20, 2020, nursing staff from the Danbury FCI Medical Department came unannounced to the Plaintiff's housing unit and took photographs of his infected body areas where the rash and sores were running rampant.

27.     On October 21, 2020, the Plaintiff reached out to the Camp Administrator/ Executive Assistant to Warden Easter for assistance in securing medications to stop the pain and itch which he was experiencing stating that it was "eating him alive."  In response, the Plaintiff was told the pharmacist was waiting for approval from the BOP Central Office in Washington, D.C., which approval was needed before he could release the medication. This was the first time Plaintiff was advised that approval was needed at the national level for him to receive the medication that had been prescribed for him. Again, Plaintiff begged for help due to the intense pain and itching. A copy of the email is attached hereto as Exhibit O and made a part hereof.

28.     On October 22, 2020, after requesting copies of the pictures taken by the facility's nursing staff on October 20, 2020, the Plaintiff was informed that the pictures were not part of his medical record and would not be released to him or for his review. A copy of the response is attached hereto as Exhibit P and made a part hereof.

29.     On October 23, 2020, Plaintiff again went to the Danbury FCI Medical Department and requested a medication, Permethrin Cream, which he was aware had been given to other inmates for the painful and continuing itch that he was experiencing. A copy of the record of said visit is attached hereto as Exhibit Q and made a part hereof.

30.     On October 27, 2020, the Plaintiff's entire housing unit was suddenly and without prior announcement treated for Scabies by FCI Danbury personnel. Specifically, FCI Danbury

personnel administered Plaintiff six doses orally of Ivermectin, a medication usually given to animals to kill parasites. A copy of the record of said treatment is attached hereto as Exhibit R and made a part hereof.

31.    On November 18, 2020, Dr. Schindler again examined Plaintiff for his continuing rash and skin eruptions which had intensified in his legs and groin regions. A copy of the record of said treatment is attached hereto as Exhibit S and made a part hereof.

32.    On December 10, 2020, the Plaintiff reached out to Warden Easter again for help for his skin condition, informing her that he had taken the ordered Scabies treatments but his symptoms nevertheless persisted. Plaintiff specifically requested the Warden to send him to an outside physician for examination and proper treatment. Plaintiff received no response from the Warden to this request. A copy of the email is attached hereto as Exhibit T and made a part hereof.

33.    On December 20, 2020, Plaintiff passed out in his housing unit and was revived by another inmate. While FCI Danbury medical staff was called, they did nothing helpful for Plaintiff. The quick thinking of the other inmate likely saved Plaintiff's life.

34.    On December 21, 2020, following this incident, Plaintiff emailed Health Administrator Dukate requesting a medical examination to determine the cause of the incident which occurred the night before and to check his heart and his remaining lung. Plaintiff received no reply to this request. A copy of the email is attached hereto as Exhibit U and made a part hereof.

35.    On December 26, 2020, Plaintiff again emailed Health Administrator Dukate to request that his prescription for Hydroxyzine and Betamethasone cream be refilled since the rash and lesions were still spreading across his entire body, causing him severe pain, itching and

suffering.  Plaintiff received no reply to this request. A copy of the email is attached hereto as Exhibit V and made a part hereof.

36.     On December 30, 2020, Plaintiff again emailed Health Administrator Dukate with the same request and again received no reply.

37.     Upon information and belief, Judge Shea and his staff visited FCI Danbury on or around January 22, 2021 to inspect the facility and review the medical condition of the inmates firsthand. Prior to the visit, personnel at FCI Danbury suddenly removed Plaintiff and several other inmates from his housing unit with similar rash infections and placed them in an unused cell block away from the inspection team.  Upon information and belief, Danbury FCI personnel removed Plaintiff and the other inmates to this cell block in order to shield their conditions from Judge Shea and his staff.

38.     The cell block in which FCI Danbury personnel confined the Plaintiff and other inmates with similar skin rashes was unclean with mold and dirt throughout the entire unit. FCI Danbury personnel provided Plaintiff and the other inmates with no explanation for the sudden isolation and did not even provide them with cleaning supplies for the unit. During this time, FCI Danbury personnel forced Plaintiff to take another treatment of Ivermectin.  Upon information and belief, this additional treatment of Ivermectin was administered without the approval of Dr. Schindler, the resident physician at FCI Danbury, or any other medical doctor.  FCI Danbury personnel has never provided Plaintiff with any medical records related to this treatment while confined in this unit.

39.     After a week in confinement, Danbury FCI personnel released Plaintiff and other infected inmates from the segregated unit without explanation. Plaintiff's rash, pain and itching persisted during this confinement and thereafter.

40.     On January 29, 2021, Plaintiff again emailed Warden Easter and her executive assistant asking for an explanation for the confinement and forced treatment with Ivermectin, and also informing them that his symptoms still persisted and were getting worse. Again, Plaintiff received no reply. A copy of the email is attached hereto as Exhibit W and made a part hereof.

41.     Thereafter, Plaintiff emailed Health Administrator Dukate stating that he had received five treatments of Ivermectin and that his rash and lesions, with related pain and itching, still persisted. Plaintiff again begged her to send him for outside medical consultation, believing as Dr. Schindler originally diagnosed, that the rash and lesion were COVID-19 related and not Scabies. Again, Plaintiff received no reply. A copy of the email is attached hereto as Exhibit X and made a part hereof.

42.     On February 22, 2021, with his skin rash and lesions persisting, Plaintiff emailed FNP Escobar requesting that his medication prescriptions again be renewed. A copy of the email is attached hereto as Exhibit Y and made a part hereof.

43.     Thereafter, after being forced by FCI Danbury personnel to receive the COVID-19 vaccine or be placed in a segregated housing unit, Plaintiff emailed Health Administrator Dukate informing her that his rash seemed to worsen after the inoculation, and he again asked her to be able to visit an outside physician for his condition. A copy of the email is attached hereto as Exhibit Z and made a part hereof.

44.     On February 26, 2021, Dr. Schindler again examined Plaintiff and noticed that his skin rash and lesions were getting worse and not healing. She prescribed additional Prednisone tablets. A copy of the record of said visit is attached hereto as Exhibit A.1 and made a part hereof.

45. On March 5, 2021, Plaintiff emailed Health Administrator Dukate for a third time requesting that he be allowed to see an outside specialist regarding his persistent symptoms. As before, he received no response. A copy of the email is attached hereto as Exhibit B.1 and made a part hereof.

46. Plaintiff also emailed FNP Escobar to again request that his prescription of Hydroxyzine be refilled as his itch was still persistent and painful. A copy of the email is attached hereto as Exhibit C.1 and made a part hereof.

47. On March 11, 2021, Plaintiff again emailed Health Administrator Dukate requesting a consultation with an outside specialist who would be able to correctly diagnose his symptoms and provide proper medical relief. He also asked again to discuss the negative reaction he was having since taking the COVID vaccine. Plaintiff received no response to this request. A copy of the email is attached hereto as Exhibit D.1 and made a part hereof.

48. On March 17, 2021, Plaintiff experienced shortness of breath (dyspnea) and was rushed to FCI Danbury's medical department.

49. On March 25, 2021, FNP Escobar examined Plaintiff and informed him that he would attempt to have FCI Danbury approve a prescription of Atarax 25 mg and Hydroxyzine for the Plaintiff's pain and symptoms. A copy of the records of said March 17 and March 25, 2021 visits are attached hereto as Exhibit E.1 and made a part hereof.

50. On March 26, 2021, the Plaintiff again reported to FCI Danbury's medical department for shortness of breath and chest pains, at which time an EKG was conducted which showed ischemia. A copy of the record of said visit is attached hereto as Exhibit F.1 and made a part hereof.

51.     On April 22, 2021, Plaintiff was rushed to the Danbury Hospital emergency room after experiencing severe chest pains and shortness of breath. A copy of the record of said visit is attached hereto as Exhibit G.1 and made a part hereof.

52.     On April 22, 2021, Plaintiff emailed case manager Stevenson requesting that he be placed into home confinement where he could at least receive proper medical care and treatment to address his ongoing medical issues. That request was denied. A copy of the email is attached hereto as Exhibit H.1 and made a part hereof.

53.     On or about May 26, 2021, Plaintiff was examined by EMT Gibson and prescribed Betamethasone cream for his persistent rash and lesions, which had continued 12 months after he first reported his symptoms to the FCI Danbury medical staff, and for the first time Plaintiff was recommended for a dermatology consultation by a BOP contracted visiting dermatologist. A copy of the record of said visit is attached hereto as Exhibit I.1 and made a part hereof.

54.     In October of 2021, Plaintiff was transferred from FCI Danbury to FPC Cumberland.

55.      Plaintiff visited the medical clinic at FPC Cumberland on October 3, 2023 and was examined by a Nurse Practitioner who noted that the rash symptoms still existed on the Plaintiff's body. A copy of the record of said visit is attached hereto as Exhibit N.1 and made a part hereof.

56.     Since being transferred, Plaintiff has continued to experience symptoms of the rash and lesions, albeit milder than while at FCI Danbury, but he has received no treatment for same.

57.    On February 25, 2023, Plaintiff was rushed to the hospital emergency room again for chest pains and shortness of breath. A copy of the record of said visit is attached hereto as Exhibit J.1 and made a part hereof.

## ADMINISTRATIVE CLAIM UNDER THE FTCA

58.    On April 28, 2023, Plaintiff filed a claim under the FTCA with the BOP seeking damages for harm, paid, suffering and emotional distressed caused by the aforementioned medical malpractice of the FCI Danbury medical department and the negligence, carelessness and inaction by the staff and administration of FCI Danbury. A copy of the FTCA claim is attached hereto as Exhibit K.1 and made a part hereof.

59.    On May 23, 2023, the BOP acknowledged receipt of Plaintiff's claim and referred it for processing. A copy of the acknowledgement is attached hereto as Exhibit L.1 and made a part hereof.

60.    On May 26, 2023, the Plaintiff received a letter from the BOP Regional Counsel stating that the BOP had six months under FTCA to respond to the claim. A copy of the letter is attached hereto as Exhibit M.1 and made a part hereof.

61.    On March 18, 2024, a response was received from the Bureau of Prisons denying Plaintiff's tort claim. A copy of the response is attached hereto as Exhibit O.1 and made a part hereof.

62.    The Plaintiff has exhausted his administrative remedies under the FTCA with respect to his claims.

63.    On September 9, 2024, Plaintiff timely filed a Complaint commencing this action within six months of the denial of his administrative claim under the FTCA.

**FIRST CAUSE OF ACTION (Medical Malpractice against Defendant, United States of America, Bureau of Prisons)**

64. Paragraphs 1 through 63 are hereby incorporated by reference and realleged as if fully set forth herein.

65. At all times relevant hereto, Warden Easter, Health Services Administrator Dukate, Dr. Schindler, FNP Escobar, EMT Gibson and Case Manager Stevenson, as well as all medical and other personnel of FCI Danbury who examined, treated or interacted with Plaintiff regarding his medical care as alleged herein, were employees of the Defendant, United States of America Bureau of Prisons, through their employment at FCI Danbury, and who were at all times acting within and pursuant to the scope of their employment with the Defendant.

66. At all times relevant hereto, the Defendant United States of America Bureau of Prisons, and in particular Danbury FCI, had a continuing duty to Plaintiff to provide him with proper and adequate medical care throughout the entire period of time he was incarcerated at Danbury FCI.

67. Beginning prior to August of 2020 and continuing to May 26, 2021 and thereafter while he remained incarcerated at Danbury FCI, Defendant, United States of American Bureau of Prisons, and/or its employees and personnel, including Health Services Administrator Dukate, Dr. Schindler, FNP Escobar, EMT Gibson and as all other personnel and staff of the Medical Department of FCI Danbury who examined, treated or interacted with Plaintiff regarding his medical care as alleged herein, undertook the care, treatment, monitoring, diagnosing and supervision of the medical care of the Plaintiff, Edwin Pawlowski, for the same or similar condition for which he originally was treated.

68. While under the aforementioned care, treatment, monitoring, diagnosing and supervision by Defendant, United States of American Bureau of Prisons, through the employees and personnel at Danbury FCI, Plaintiff, Edwin Pawlowski, was caused to suffer severe, serious,

and painful personal injuries and damages, some of which are or may be permanent, including serve emotional distress, as set forth herein.

69.    The injuries suffered by Plaintiff, Edwin Pawlowski, were caused by the failure of Defendant, United States of American Bureau of Prisons, through the employees and personnel at Danbury FCI, to exercise reasonable care under all facts and circumstances then and there present, as well as the failure to provide him adequate medical care as an incarcerated person, in that they:

(a)    failed to adequately and properly care for, treat, diagnose, monitor and supervise Plaintiff;

(b)    failed to adhere to the standard of care for treatment of Plaintiff;

(c)    failed to diagnose Plaintiff's skin condition;

(d)    failed to properly evaluate, diagnose, monitor and/or treat Plaintiff's skin rash and related pain and itching;

(e)    failed to properly evaluate, diagnose, monitor and/or treat Plaintiff's reaction to the Covid-19 vaccination;

(f)    failed to properly evaluate, diagnose, monitor and/or treat Plaintiff's breathing and lung conditions;

(g)    failed to follow-up on Plaintiff's continued skin rash, pain and itching that did not improve after treatment;

(h)    failed to recommend or allow referral to a dermatologist or other outside medical specialist to treat Plaintiff's rash, pain and itching despite repeated requests from Plaintiff;

(i)     improperly and unnecessarily treated Plaintiff with six courses, and thirty-six total doses, of the parasite drug Ivermectin, which is non-FDA approved and often given to animals, when this dosage exceeded the recommended intervals of one treatment every three months;

(j)     improperly and unnecessarily treated Plaintiff with six courses, and thirty-six total doses, of the parasite drug Ivermectin which, upon information and belief, was administered by a nurse and not recommended or prescribed by a medical doctor;

(k)     improperly and unnecessarily treated Plaintiff with six courses, and thirty-six total doses, of the parasite drug Ivermectin, despite the fact that Defendant had not performed any tests, examination or diagnosis of Plaintiff for Scabies, and despite not testing the prison environment itself for evidence of Scabies;

(l)     failed to recommend Plaintiff for further testing to properly diagnose Plaintiff's rash, pain and itching and determine if it was a reaction to Covid-19 or the Covid-19 vaccination;

(m)     failed to recognize that Plaintiff's rash, pain and itching were getting worse and that his condition was deteriorating;

(n)     failed to assign personnel with the proper and appropriate medical training to Plaintiff's care and treatment;

(o)     disregarded the diagnosis and recommendations of Dr. Schindler who did not believe that Plaintiff had Scabies or should be treated with Ivermectin for his condition;

(p)     improperly delayed diagnosis and treatment of his rash, pain and itching;

15

(q)     failed to provide physicians and/or other medical personnel with the requisite knowledge, skill, training and experience to adequately and properly care for, treat, diagnose, monitor and supervise incarcerated patients such as Plaintiff;

(r)     failed to consider alternative medications and treatments which might have been helpful in relieving the Plaintiff's pain and suffering, such as Recidivire, which could have eased Plaintiff's pain, itching and suffered;

(s)     directing his transfer to an unused cell block that was dirty and moldy, for no apparent reason, which exacerbated his rash, pain and itching;

(t)     failed to respond to and/or failed to grant Plaintiff's requests for outside consultation from specialized medical personnel to examine him, review his condition, and provide proper treatment to end his suffering, pain and itching from his rash condition;

(u)     continually failed to provide him with adequate or proper medical treatment for his rash, pain and itching throughout the course of his incarceration at FCI Danbury; and

(v)     failed to promulgate and/or enforce rules, regulations, standards and protocols for the care and treatment of patients such as Plaintiff.

70.     As a result of the carelessness and negligence of Defendant, United States of American Bureau of Prisons, through the employees and personnel at Danbury FCI, Plaintiff, Edwin Pawlowski, suffered the following severe, serious and painful injuries, some of which may be permanent:

(a)     pain and suffering;

(b)     severe emotional distress;

(c)     severe pain, suffering, discomfort, and emotional distress for over twelve months due to the severe and acute rash, agonizing sores, serrated lesions and skin eruptions over Plaintiff's entire body;

(d)     multiple unnecessary treatments with Ivermectin leading to adverse reactions including fatigue, abdominal pain, constipation, dizziness, vertigo (passing out several times), shortness of breath, all while not improving, and actually worsening, his rash, pain and itching.

(e)     increased risk of recurrence of his rash, pain and itching;

(f)     improper and delayed treatment with associated unnecessary pain and itching extending over a year;

(g)     sleep deprivation;

(h)     decreased mobility;

(i)     fear of future negative health issues resulting from treatment with Ivermectin and other improper treatments; and

(j)     psychological and physiological sequelae.

71.     As a result of the injuries and damages that he suffered, Plaintiff, Edwin Pawlowski, has been deprived of his ability to carry on and enjoy life's activities.

72.     As this claim is brought under the FTCA subject to the procedural rules of United States District Court, Plaintiff is not obligated to have filed a good faith certification or written opinion of a health care provider under Connecticut General Statutes §51-190a, pursuant to the decision in *Corley v. United States*, 11 F.4th 79 (2021).

**SECOND CAUSE OF ACTION (Negligence of Non-Medical Personnel of Defendant, United States of America, Bureau of Prisons)**

17

73.    Paragraphs 1 through 63 are hereby incorporated by reference and realleged as if fully set forth herein.

74.    At all times relevant hereto, Warden Easter, Case Manager Stevenson, and other non-medical personnel of FCI Danbury who interacted with Plaintiff regarding his medical care as alleged herein, were employees of the Defendant, United States of America Bureau of Prisons, through their employment at FCI Danbury, and who were at all times acting within and pursuant to the scope of their employment with the Defendant.

75.    At all times relevant hereto, the Defendant United States of America Bureau of Prisons, and in particular Danbury FCI, had a continuing duty to Plaintiff to provide him with proper and adequate medical care while he was incarcerated at Danbury FCI.

76.    Certain non-medical personnel of the Defendant, United States of America Bureau of Prisons working at FCI Danbury, including but not limited to Warden Easter, Administrator Dukate, and Case Manager Stevenson, engaged in actions, inactions, and conduct which interfered with and caused Plaintiff not to receive adequate medical care while he was incarcerated at Danbury FCI, in one of more of the following ways:

(a)    In that, without warning, notice or explanation, they transferred Plaintiff from his regular housing unit into an old, dirty and moldy housing unit for the purpose, upon information and belief, to avoid and prevent Plaintiff with his rash condition being observed by Judge Shea and his staff when they visited FCI Danbury;

(b)    In that they transferred In that while Plaintiff was housed in this old, dirty and moldy housing unit, they forced him to under another course of Ivermectin treatment, despite the fact that he did not have Scabies, had not been tested for Scabies, Dr. Schindler had stated he did not have Scabies, and, upon information

and belief, no medical doctor had prescribed or authorized to administration of Ivermectin to Plaintiff;

(c) In that they transferred Plaintiff from his regular housing unit into an old, dirty and moldy housing unit without having evaluated the prison environment for the presence of Scabies or any other condition which would require Plaintiff's segregation from his regular housing unit;

(d) In that they repeatedly and continually prevented Plaintiff from receiving his medications prescribed by Dr. Schindler and the FCI Danbury medical department in a timely manner;

(e) In that they repeatedly and continually ignored Plaintiff's pleas begging for alternative medications to treat his rash, itching and suffering;

(f) In that they repeatedly and continually ignored and/or refused Plaintiff's requests for referrals to an outside medical specialist to examine, diagnose and treat his rash, pain and itching;

(g) In that they forced Plaintiff to receive Covid-19 vaccinations or be forced into a segregated housing unit, without due regard to his medical conditions or the advice of medical professionals;

(h) In that they forced Plaintiff to receive multiple Ivermectin treatments, purportedly for Scabies, despite the fact that Dr. Schindler advised that Plaintiff did not have Scabies;

(i) In that they refused Plaintiff's request that he be placed in home confinement where he could get the proper treatment for his rash, itching and pain;

19

(j)     In that they refused Plaintiff's request that he be placed in home confinement during the Covid-19 pandemic despite the fact that he suffered from multiple high-risk factors including having only one lung, COPD, dyspnea, severe sleep apnea, hypertension, heart disease, diverticulitis and a herpes virus in his eyes requiring the use of daily anti-viral medications; and

(k)     In that they continually failed to provide him with adequate or proper medical treatment for his rash, pain and itching throughout the course of his incarceration at FCI Danbury.

77.     Warden Easter had a continuing duty, throughout Plaintiff's incarceration and Danbury FCI, to supervise the personnel at FCI Danbury, including but not limited to Health Administrator Dukate and Case Manager Stevenson, and knew or should have known of the aforementioned actions of the personnel at FCI Danbury who had negligently ignored and/or refused Plaintiff's pleas for help in the treatment of his rash and associated intolerable pain and itching, and his requests for outside medical consultation and treatment.

78.     As a result of the carelessness and negligence of Defendant, United States of American Bureau of Prisons, through the non-medical employees and personnel at Danbury FCI, Plaintiff, Edwin Pawlowski, suffered the following severe, serious and painful injuries, some of which may be permanent:

(a)     pain and suffering;

(b)     severe emotional distress;

(c)     severe pain, suffering, discomfort, and emotional distress for over twelve months due to the severe and acute rash, agonizing sores, serrated lesions and skin eruptions over Plaintiff's entire body;

(d)     multiple unnecessary treatments with Ivermectin leading to adverse reactions including fatigue, abdominal pain, constipation, dizziness, vertigo (passing out several times), shortness of breath, all while not improving, and actually worsening, his rash, pain and itching.

(e)     increased risk of recurrence of his rash, pain and itching;

(f)     improper and delayed treatment with associated unnecessary pain and itching extending over a year;

(g)     sleep deprivation;

(h)     decreased mobility;

(i)     fear of future negative health issues resulting from treatment with Ivermectin and other improper treatments; and

(j)     psychological and physiological sequelae.

79.     As a result of the injuries and damages that he suffered, Plaintiff, Edwin Pawlowski, has been deprived of his ability to carry on and enjoy life's activities.

**THIRD CAUSE OF ACTION (Negligent Infliction of Emotional Distress against United States of America, Bureau of Prisons)**

80.     Paragraphs 73 through 79 are hereby incorporated by reference and realleged as if fully set forth herein.

81.     The aforementioned actions, inactions and conduct of the aforementioned personnel of the Defendant, United States of America Bureau of Prisons working at FCI Danbury, including but not limited to Warden Easter, Administrator Dukate, and Case Manager Stevenson created an unreasonable risk of causing the plaintiff emotional distress.

82.	The emotional distress suffered by the Plaintiff as a result of the aforementioned actions, inactions and conduct of the personnel of the Defendant, United States of America Bureau of Prisons working at FCI Danbury was foreseeable.

83.	The emotional distress suffered by the Plaintiff as a result of the aforementioned actions, inactions and conduct of the non-medical personnel of the Defendant, United States of America Bureau of Prisons working at FCI Danbury was severe enough that it might result in illness or bodily harm to Plaintiff.

84.	The  defendant's aforementioned actions, inactions and conduct of the non-medical personnel of the Defendant, United States of America Bureau of Prisons working at FCI Danbury caused the Plaintiff to suffer the aforementioned emotional distress.

## PRAYER FOR RELIEF

WHERFORE, Plaintiff requests the following relief:

1.      Compensatory money damages in the amount of $1,500,000.00, or such other

amounts as may be proven during the trial of this matter;

2.      Such other and further relief as the Court deems just and proper.

Plaintiff requests a trial by jury on all causes of action.

                                PLAINTIFF, EDWIN PAWLOWSKI


                        By:     /s/ Scott M. Harrington ct02482
                                Scott M. Harrington, Esq. ct02482
                                DISERIO MARTIN O'CONNOR &
                                     CASTIGLIONI, LLP
                                1010 Washington Boulevard
                                Suite 800
                                Stamford, CT 06901
                                (203) 358-0800
                                (203) 348-2321 (fax)
                                sharrington@dmoc.com

## CERTIFICATION

I hereby certify that on July 2, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be served by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ Scott M. Harrington ct02482
Scott M. Harrington, Esq. ct02482